NOT FOR CITATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHUNGHWA TELECOM GLOBAL, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MEDCOM, LLC, a Nevada Limited Liability Company; QT TALK, INC., a Nevada Corporation; DAVID COOPER, an Individual; CHRIS SANDERS, an Individual; and Does 1-50, inclusive,,<br><br>Defendants. | Case No. 5:13-cv-02104 HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: Dkt. No. 10] |

Pursuant to Fed. R. Civ. P. 12(b)(2), (5), and (6), defendants move to dismiss the complaint for lack of personal jurisdiction, improper service of process, and failure to state a claim for relief. Plaintiff opposes the motion. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Upon consideration of the moving and responding papers, as well as the arguments of counsel, the court grants the motion in part and denies it in part, with leave to amend.

## BACKGROUND

Plaintiff Chunghwa Telecom Global, Inc. (Chunghwa) is a California corporation with its principal place of business in San Jose, California. Defendant Medcom LLC (Medcom) is alleged to be a Nevada corporation with its principal place of business in New York. (Dkt. No. 1-1,

Complaint ¶ 2). Defendant QT-Talk, Inc. (QT) is alleged to be a Nevada corporation with its principal place of business in New York. (Id. ¶ 3). According to the complaint, defendants David Cooper and Chris Sander are individuals residing in New York who are current or former officers, employees, and shareholders of Medcom and QT Talk. (Id. ¶¶ 4-5).

On or about August 31, 2010, Chunghwa and Medcom entered into a reciprocal telecommunications service agreement (Agreement) in which they agreed to provide telecommunications services to one another. Under the contract's terms, Chunghwa's invoices were sent on a weekly basis, with Medcom's payment due within 7 days of receipt of each invoice.

The complaint alleges that Medcom and QT, "by and through their officers, defendants Cooper and Sander[], directed and authorized Chunghwa to provide telecommunication services to QT-Talk under the MedCom-Chunghwa Agreement." (Complaint ¶ 10). Chunghwa further alleges that "Medcom, QT-Talk, Cooper, and Sander[] and their employees represented that QT-Talk was an authorized affiliate or alter ego of Medcom and that QT-Talk and Medcom would fulfill all obligations of Medcom under the Agreement." (Id.). Chunghwa says that, in reliance on defendants' representations and authorizations, it began providing telecommunications services to QT.

According to the complaint, Medcom's and QT's invoices initially ranged from a few hundred dollars to nine hundred dollars. Then, starting around mid-September 2012, Chunghwa says that QT's and Medcom's usage soared, such that the weekly invoiced amounts were over $6,000 for the week of September 24 and then nearly $33,000 for the week of October 1. Additionally, plaintiff claims that Medcom and QT stopped making payments for the weekly invoices within 7 days of receipt.

In the following weeks, Medcom's and QT's usage reportedly continued to increase. And, in late October or early November 2012, plaintiff says that it contacted the companies to talk about their increased usage and their overdue payments. The complaint alleges that "Defendants, MedCom, QT-Talk and their officers Sander[] and Cooper[] represented that payments were simply delayed due to Hurricane Sandy, but would be forthcoming." (Complaint ¶ 14). Plaintiff

further alleges that "[d]efendants demanded [that] Chunghwa continue to provide telecommunications services pursuant to the Agreement" and "further requested that Chunghwa provide telecommunications traffic services with Guatemala for defendants." (Id.). Chunghwa says that, in reliance on these statements, it continued to provide services to Medcom and QT, but declined to provide the traffic services with Guatemala. Plaintiff claims that, at the time these statements and representations were made, defendants had no intention of paying for the services to be provided by Chunghwa. Indeed, plaintiff says that Medcom and QT never did pay up, even after Hurricane Sandy passed and all banking and business operations resumed. Plaintiff believes that Medcom no longer is in business; and, according to the complaint, defendants presently owe plaintiff $197,698.18.

Chunghwa filed the instant suit in state court, asserting four claims for relief against all defendants: (1) breach of contract; (2) fraud; (3) negligent misrepresentation; and (4) quantum meruit. Defendants removed the matter here, asserting diversity jurisdiction, 28 U.S.C. § 1332. Pursuant to Fed. R. Civ. P. 12(b)(2), defendants QT Talk, Cooper, and Sander move to dismiss for lack of subject matter jurisdiction. All defendants move to dismiss under Fed. R. Civ. P. 12(b)(5) for improper service of process. And, all defendants also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

For the reasons discussed below, the court grants QT's, Cooper's, and Sander's motion to dismiss for lack of personal jurisdiction. The request for dismissal under Fed. R. Civ. P. 12(b)(5) for improper service is denied. Medcom's Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted in part and denied in part. Chunghwa is given leave to amend.

## DISCUSSION

### A. Personal Jurisdiction

QT, Cooper, and Sander contend that they are not subject to this court's jurisdiction. Cooper and Sander both aver that they are New York residents who own no property in California and conduct no personal business here. (Cooper Decl. ¶ 5; Sander Decl. ¶ 4). Additionally, Cooper attests that QT is a Nevada limited liability company with no offices or property in California. (Cooper Decl. ¶ 6). Moreover, these defendants are not parties or signatories to the

3

Chunghwa-Medcom Agreement.

"A federal district court sitting in diversity has in personam jurisdiction over a defendant to the extent the forum state's law constitutionally provides." Metropolitan Life Ins. Co. v. Neaves, 912 F.3d 1062, 1065 (9th Cir. 1990) (citing Data Disc, Inc. v. Systems Technology Ass'n, 557 F.2d 1280, 1286 (9th Cir. 1977)). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004)). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)).

There are two types of jurisdiction: general and specific. "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state." Mavrix Photo, Inc., 647 F.3d at 1223-24 (internal citations and quotations omitted). Chunghwa does not contend that this court has general jurisdiction over QT, Cooper, or Sander. Accordingly, this court may exercise personal jurisdiction over QT, Cooper, and Sander only if specific jurisdiction exists.

Specific jurisdiction arises when (1) the non-resident defendant purposefully directs his activities or consummates some transaction with the forum or a forum resident; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim is one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it must be reasonable. Mavrix Photo, Inc., 647 F.3d at 1227-28 (quoting Schwarzenegger, 374 F.3d at 802).

Chunghwa bears the burden of establishing this court's jurisdiction over defendants. Where, as here, no evidentiary hearing is held, "plaintiff need only make a prima facie showing of

4

jurisdiction to avoid the defendant's motion to dismiss." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). To satisfy its burden of proof, Chunghwa cannot rely solely on the allegations of its complaint. Nevertheless, the court must take uncontroverted allegations as true; and, conflicts between facts contained in the parties' affidavits must be resolved in Chunghwa's favor. Id. Defendants bear the burden of presenting a "compelling case" establishing that the exercise of jurisdiction over them is unreasonable. Bancroft & Masters, Inc. v. August Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).

The court rejects Chunghwa's contention that QT, Cooper, and Sander are subject to personal jurisdiction here by virtue of the Agreement's forum selection clause requiring disputes to be brought in California state or federal courts. As noted above, none of these defendants is a party or a signatory to the Agreement, and Chunghwa has not convincingly demonstrated how they could be bound by that contract's forum selection clause. Defendants point out that the Agreement provides that its terms "may not be modified, except by a written document signed by authorized officers of the Parties hereto." (Cooper Decl., Ex. A at 5). Plaintiff has not presented any evidence indicating that the Agreement was modified to bind QT or Cooper or Sander in their individual capacities.

Chunghwa next contends that this court properly may assert jurisdiction over QT, Cooper, and Sander because they allegedly made affirmative misrepresentations to induce Chunghwa to continue providing telecommunications services to Medcom and QT. Cooper states that he is a member of Medcom and QT. (Cooper Decl. ¶ 2). Sander says that he is not an owner, member, or shareholder of Medcom or QT (Sander Decl. ¶ 2), and defendants refer to him as a Medcom "worker." Cooper and Sander contend that the complaint does not sufficiently allege what actions, if any, they undertook in their individual capacities and, further, that they cannot be held liable simply because of their association with Medcom or QT.

"Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." Wolf Designs, Inc. v. DHR Co., 322 F. Supp.2d 1065, 1072 (C.D. Cal. 2004) (quoting Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989)). Even so, defendants'

"status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 1488, 79 L.Ed.2d 804 (1984). And, "the corporate form may be ignored in two cases: (1) where the corporation is the agent or alter ego of the individual defendant, or (2) by virtue of the individual's control of, and direct participation in the alleged activities." Wolf Designs, 322 F. Supp.2d at 1072 (citing Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir.1984) and Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir.1985)).

"'A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'" Wolf Designs, 322 F. Supp.2d at 1072 (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir.1999)). "However, mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." Id. (citing PMC, Inc. v. Kadisha, 78 Cal.App.4th 1368, 1389, 93 Cal.Rptr.2d 663 (2000)). "As recognized by the Ninth Circuit, '[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity.'" Id. (quoting Davis, 885 F.2d at 524).

Chunghwa argues that the "guiding spirit" or "central figure" standard does not apply here because the alleged wrongful conduct was carried out by Cooper and Sander in their individual capacities. But, the complaint lumps all defendants together, in highly conclusory fashion, in the alleged misdeeds. Moreover, Chunghwa does not allege sufficient facts to enable the court to properly assess each defendant's role (if any) in the alleged activities for the purpose of evaluating whether they are subject to personal jurisdiction here or whether the fiduciary shield doctrine might apply.

Nor does the complaint properly allege a claim for alter ego liability. "Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice to

a third person." Moreland v. Ad Optimizers, LLC, No. C13-00216 PSG, 2013 WL 1410138 at *2 (N.D. Cal., Apr. 8, 2013) (citations omitted). "The doctrine requires: (1) a unity of interest and ownership such that the separate identities of the corporation and the individual no longer exist; and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow." Id. (citations omitted). Here, Chunghwa's complaint says only that "Defendants Medcom, QT, Cooper, and Sander and their employees represented that QT was an authorized affiliate or alter ego of Medcom." (Complaint ¶ 8). This allegation is insufficient to establish that an alter ego relationship existed between the individual defendants and the corporation.

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is granted. Plaintiff will, however, be given leave to amend.[1]

**B. Service of Process**

Defendants move to dismiss for improper service of process. "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988). When service is challenged, the plaintiff bears the burden of establishing sufficiency of service under Fed. R. Civ. P. 4. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004)). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984). "However, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4." Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986), cert. denied, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987) (citation omitted).

Here, the process server came to Medcom's office in New York and left four separate envelopes (each containing a copy of the complaint) with an administrative assistant at the front desk. The parties dispute whether that assistant said she was authorized to accept service of

---

[1] Chunghwa's opposition papers make a passing reference to jurisdictional discovery. However, when asked at the motion hearing what discovery was required, plaintiff stated that it could amend its complaint without any discovery.

7

1  process for Medcom, QT, Cooper, or Sander. The process server attests that she told him that he
2  could not see anyone in the office, but that she was authorized to accept service of the summons
3  and complaint on behalf of all defendants. (Zaccardo Decl. ¶ 4). The assistant denies ever saying,
4  "I was authorized to accept service of the summons and complaint on behalf of Medcom, QT Talk,
5  David Cooper and Chris Sander." (Alvarez Decl. ¶ 2). She further states that she has no such
6  authorization. (Alvarez Decl. ¶ 3).

7  Under the circumstances presented here, the court will construe the facts and resolve
8  factual conflicts in plaintiff's favor. The fact that the assistant denies saying the exact quoted
9  language "I was authorized to accept service of the summons and complaint on behalf of Medcom,
10  QT Talk, David Cooper and Chris Sander," leaves open the possibility that she told the process
11  server words to that effect. "Defendant cannot allow individuals at its offices to represent to a
12  process server that a particular individual has authority to accept process and then later complain
13  that service was insufficient." Bender v. Intersil Corp., No. C09-01155 CW, 2009 WL 2969462 at
14  *2 (N.D. Cal., Sept. 14, 2009). Moreover, defendants clearly received notice of these proceedings
15  and copies of the complaint and have proceeded to defend the action. Defendants' Fed. R. Civ. P.
16  12(b)(5) motion is denied.

17  **C. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

18  A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests
19  the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.
20  2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of
21  sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police
22  Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the
23  complaint must be taken as true and construed in the light most favorable to the claimant. Id.
24  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
25  statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Moreover, "the court
26  is not required to accept legal conclusions cast in the form of factual allegations if those
27  conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness
28  Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

1    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
2    claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations
3    must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v.
4    Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted)
5    However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S.Ct. at
6    1950. A claim is plausible if its factual content permits the court to draw a reasonable inference
7    that the defendant is liable for the alleged misconduct. Id. A plaintiff does not have to provide
8    detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-
9    harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

**Claim 1: Breach of Contract**

To state a claim for breach of contract, "a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach." Lyons v. Bank of America, N.A., No. C11-01232 CW, 2011 WL 3607608 at *2 (N.D. Cal., Aug. 15, 2011) (citing Armstrong Petrol. Corp. v. Tri–Valley Oil & Gas Co., 116 Cal.App.4th 1375, 1391 n. 6, 11 Cal.Rptr.3d 412 (2004)).

Medcom argues that Chunghwa fails to state a claim for breach of contract because it did not did not quote the Agreement verbatim or append a copy of it to the complaint. "Rule 8 of the Federal Rules of Civil Procedure provides that, in alleging the existence of a contract, a plaintiff may set forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect." Id. Here, the complaint clearly identifies the existence of the Agreement, its material terms, and the nature of Medcom's breach, i.e., failure to pay sums due and owing under the contract. Medcom's motion to dismiss this claim is denied.

With respect to QT, Cooper, and Sander, Chunghwa maintains that they may be held liable

9

as alter egos of Medcom. As discussed above, however, the complaint fails to allege sufficient facts for alter ego liability (and, plaintiff has not established personal jurisdiction as to these defendants, in any event). Because plaintiff is being given an opportunity to amend as to the jurisdictional issues, this claim is also dismissed with leave to amend as to QT, Cooper, and Sander.

**Claims 2 and 3: Fraud and Negligent Misrepresentation**

To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. Lazar v. Super. Ct., 12 Cal.4th 631, 638, 49 Cal. Rptr.2d 377, 909 P.2d 981(1996). Moreover, a "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). To survive a motion to dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Defendants argue that the complaint's allegations essentially concern missed payments and do not amount to fraud. The court disagrees. The gist of the allegations is that defendants fraudulently induced Chunghwa, through promises to pay, to provide services for which they actually had no intention of ever paying. Nevertheless, as discussed above in connection with defendants' Fed. R. Civ. P. 12(b)(2) motion to dismiss, the complaint's allegations lack specificity as to what each defendant is alleged to have done that was fraudulent. Accordingly, plaintiff's claims for fraud and negligent misrepresentation are dismissed with leave to amend.

**Claim 4: Quantum Meruit**

Medcom argues that plaintiff cannot state a claim for quantum meruit because the parties'

respective rights are set out in the written Agreement.  In its opposition, plaintiff clarifies that the sole purpose of this claim is to pursue damages against QT, Cooper, and Sander as to whom there is no written contract.  Inasmuch as plaintiff's complaint indicates that this claim is asserted against "all defendants," this claim is dismissed as to Medcom without leave to amend.

Because the court grants QT's, Cooper's, and Sander's motion to dismiss for lack of personal jurisdiction, this claim is also dismissed as to them.  But, since plaintiff is being given leave to amend, the court rules on the substantive allegations of this claim as follows:  "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant."  In re De Laurentis Entertainment Group, Inc., 963 F.2d 1269, 1272 (9th Cir. 1992).  "Quantum meruit is based *not* on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation."  Id.  To state a claim for relief, Chunghwa must plead facts that showing that (1) it has rendered services that benefitted the defendants and (2) defendants would be unjustly enriched if Chunghwa was not compensated.  Id.

As discussed above, the complaint indiscriminately groups all defendants together and does not adequately allege who made what representations to plaintiff.  Accordingly, this claim will also be dismissed with leave to amend.

**Punitive Damages**

Defendants argue that the complaint fails to state a basis for punitive damages under California Civil Code § 3294, which provides for punitive damages "[i]n an action for the breach of an obligation *not* arising from contract where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . ."  Cal. Civ. Code § 3294 (emphasis added).  Because Chunghwa's non-contract claims are being dismissed with leave to amend, its request for punitive damages is dismissed without prejudice.

# ORDER

Based on the foregoing, the court grants defendants' Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction; denies defendants' Fed. R. Civ. P. 12(b)(5) motion to

11

dismiss for improper service; and grants in part and denies in part defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.

Plaintiff is given leave to amend, and its amended pleading (should it choose to file one) shall be filed within 14 days from the date of this order.  Leave to amend is limited to those claims pled in the complaint and consistent with the rulings above.[2]

**SO ORDERED.**

Dated:   October 16, 2013



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent plaintiff intends to assert new or different claims for relief or add new parties, it must make an appropriate application pursuant to Fed. R. Civ. P. 15.  Failure to comply with this order may result in sanctions.

1  5:13-cv-02104-HRL Notice has been electronically mailed to:
2  Chip Cox     chipc@gpsllp.com, ccalone@gpsllp.com
3  Helen Lee Greenberg     helen.greenberg@lewisbrisbois.com, elaine.auwbrey@lewisbrisbois.com,
4  normajean.vincent@lewisbrisbois.com
5  Michael Fishman     MFishman@mflawny.com
6  Michael Steven Romeo     romeo@lbbslaw.com
7  Nelson Hsieh     nhsieh@gpsllp.com, ccalone@gpsllp.com
8  Yen Phi Chau     ychau@gpsllp.com, mbender@gpsllp.com