UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHUNGHWA TELECOM GLOBAL, INC, <br><br> Plaintiff, <br><br> v. <br><br> MEDCOM, LLC, a Nevada Limited Liability company; QT TALK, INC., a Nevada Corporation; DAVID COOPER, an individual, <br><br> Defendants. | Case No. 5:13-cv-02104-HRL <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 44 |

This is a diversity action for alleged breach of contract and fraud arising out of a reciprocal telecommunications service agreement (Agreement) entered between plaintiff Chunghwa Telecom Global, Inc. (Chunghwa) and defendant Medcom, LLC (Medcom). In sum, Chunghwa claims that defendants fraudulently induced the company to provide telecommunications services for which they had no intention of paying. Plaintiff says it is owed over $197,000. Medcom reportedly is defunct, and Chunghwa claims that defendants QT Talk LLC (QT)[1] and David Cooper (an alleged officer, employee, or shareholder of Medcom and QT) are on the hook for the sums allegedly due. Defendants maintain that this lawsuit is nothing more than a simple contract dispute between

---

[1] QT Talk says it erroneously was sued as "QT Talk, Inc."

plaintiff and Medcom (and Medcom alone) over one missed invoice payment.

Chunghwa's original complaint was filed in state court against Medcom, QT, Cooper, and one Chris Sander. Defendants removed the matter here, asserting diversity jurisdiction, 28 U.S.C. § 1332. They subsequently moved to dismiss for lack of personal jurisdiction, improper service of process, and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6).

This court denied the motion to dismiss for improper service, but granted the motion to dismiss for lack of personal jurisdiction and for failure to state a claim, with leave to amend. Plaintiff subsequently filed a First Amended Complaint (FAC). The FAC drops Sander from this suit. It reasserts a breach of contract claim against Medcom and QT, as well as claims for fraud and negligent misrepresentation against all defendants. The FAC also reasserts a claim for quantum meruit against QT. Unlike the original complaint, the FAC no longer asserts a separate claim for punitive damages; but, plaintiff continues to seek punitive damages as part and parcel of its claims for fraud and negligent misrepresentation.

Pursuant to Fed. R. Civ. P. 12(b)(2), QT and Cooper move, once again, to dismiss for lack of personal jurisdiction.[2] QT also moves to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Chunghwa has no claim for breach of contract[3] or quantum meruit. All defendants move to dismiss the remaining claims for fraud and negligent misrepresentation under Fed. R. Civ. P. 12(b)(6), arguing that the FAC still fails to state a claim for relief. They also maintain that the FAC does not sufficiently allege any basis for punitive damages. Upon consideration of the moving and responding papers, as well as the arguments of counsel, the court denies the motion.[4]

**DISCUSSION**

**A.    Personal Jurisdiction**

QT and Cooper maintain that they are not subject to this court's jurisdiction. Cooper, who

---

[2] This court's jurisdiction over Medcom is undisputed. Medcom contractually agreed to submit to the jurisdiction of any California court. (FAC ¶ 12).

[3] The court denied Medcom's prior motion to dismiss Chunghwa's contract claim (Dkt. 33), and Medcom does not reassert a challenge to that claim here.

[4] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

identifies himself as a "member" of both Medcom and QT, says that he is a New York resident who owns no property in California and conducts no personal business here. (Cooper Decl. ¶ 5). Additionally, Cooper attests that QT is a Nevada limited liability company with no offices or property in California. (Id. ¶ 6). He also says that QT does not conduct regular or continuous business here. (Id.). Both QT and Cooper emphasize that they are not, and never were, parties or signatories to the Chunghwa-Medcom Agreement.

Chunghwa, on the other hand, contends that this court properly may exercise jurisdiction over QT by virtue of an alter ego relationship between QT and Medcom. Plaintiff further contends that QT purposefully availed itself of the privilege of conducting activities in California. As for Cooper, Chunghwa says that this court has personal jurisdiction over him based on his involvement in the alleged tortious conduct.

"A federal district court sitting in diversity has in personam jurisdiction over a defendant to the extent the forum state's law constitutionally provides." Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1065 (9th Cir. 1990) (citing Data Disc, Inc. v. Systems Technology Ass'n, 557 F.2d 1280, 1286 (9th Cir. 1977)). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004)). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)).

There are two types of jurisdiction: general and specific. There are no allegations supporting the exercise of general jurisdiction over Cooper and QT.[5] Thus, this court may

---

[5] See Mavrix Photo, Inc., 647 F.3d at 1223-24 ("For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state.") (citations omitted).

3

exercise personal jurisdiction over these defendants only if specific jurisdiction exists. Specific jurisdiction arises when (1) the non-resident defendant purposefully directs his activities or consummates some transaction with the forum or a forum resident; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim is one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it must be reasonable. Mavrix Photo, Inc., 647 F.3d at 1227-28 (quoting Schwarzenegger, 374 F.3d at 802).

Chunghwa bears the burden of establishing this court's jurisdiction over defendants. Where, as here, no evidentiary hearing is held, "plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). That is, plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Id. (quotation marks and citation omitted). And, unless directly contravened, Chunghwa's version of the facts must be taken as true; and, conflicts between facts contained in affidavits must be resolved in Chunghwa's favor. Id. If Chunghwa satisfies its burden as to the first two elements of specific jurisdiction, then the burden shifts to defendants to present a "compelling case" establishing that the exercise of jurisdiction over them is unreasonable. Bancroft & Masters, Inc. v. August Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).

### 1. Defendant QT

As discussed above, Chunghwa maintains that this court properly may exercise jurisdiction over QT because QT and Medcom are alter egos of one another and because QT purposefully directed certain activities in California that perpetrated or furthered defendants' alleged fraud. The gist of plaintiff's allegations is that QT and Medcom were held out to be one and the same.

"Alter ego is a limited doctrine invoked only where recognition of the corporate form would work an injustice to a third person." Moreland v. Ad Optimizers, LLC, No. C13-00216 PSG, 2013 WL 1410138 at *2 (N.D. Cal., Apr. 8, 2013) (citations omitted). "The doctrine requires: (1) a unity of interest and ownership such that the separate identities of the corporation

and the individual no longer exist; and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow." Id. "Sole ownership and control is insufficient to support a finding of alter ego liability." Id. To establish an alter ego relationship, "the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." Harris Rutsky & Co. Ins. Services, Inc., 328 F.3d at 1134-35 (quotations and citations omitted). That is, "[t]he plaintiff must show that the parent exercises such control over the subsidiary so as to render the latter the mere instrumentality of the former." Id. (quotations and citations omitted).

In determining whether both prongs of the alter ego test are satisfied, a number of factors are considered, including (1) commingling of funds; (2) failure to maintain minutes or adequate corporate records; (3) identical equitable owners with dominion and control over both entities; the use of the same business location; (4) employment of the same employees; (5) inadequate capitalization; (6) the use of a corporation as a mere shell, instrumentality, or conduit for the business of an individual or another corporation; (7) concealment or misrepresentation of the identity of responsible ownership or management; (8) disregard of legal formalities; and (9) the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another. Fed. Reserve Bank of San Francisco v. HK Sys. No. C-95-1190 MHP, 1997 WL 227955 at *6 n.7 (N.D. Cal., Apr. 24, 1997) (citing Associated Vendors, Inc. v. Oakland Meat Co., 26 Cal. Rptr. 806, 813 (1962). "Not all of the enumerated factors must be found. They merely suggest those matters that may be considered in analyzing the two-prong test." Id.

Chunghwa's FAC alleges the following facts:

- Medcom and QT share a substantial unity of ownership and interest: "According to corporate filings, Defendant MedCom is and was managed by Managing Members Eric Ramos, David Cooper and Carlton Barlow." (FAC ¶ 5). [6] "On information and belief, Ramos and Cooper are also the Managing Members of defendant [QT]." (Id.). "Additionally, according to corporate filings, Ramos and Cooper are or were Director and Treasurer, and President and Secretary, respectively, of [QT]." (Id.).

---

[6] Ramos and Barlow are not named defendants.

5

> "Cooper has also represented himself on written communications to Plaintiff as the Chief Executive Officer of [QT]." (Id.).

- Medcom and QT operate their businesses at the same location: 5 Hanover Square, Suite 1401, New York, New York 10004 and are "also associated with the addresses of 15 Broad Street, New York, New York and 45 Broadway Street #1440, New York, New York." (FAC ¶ 6).

- Medcom and QT each carried on one another's business, did not adhere to corporate formalities, and exercised dominion and control over one another such that the entities were mere shells and instrumentalities for the conduct of the other's business: "Defendants MedCom and [QT] shared employees and commingled funds and other assets of each other. Employees and officers of [QT] regularly responded to communications directed to MedCom, and vice versa. Defendant [QT] billed Plaintiff for telecommunication traffic supplied by MedCom, and directed that payment be made to the bank account of [QT] and QT Wholesale LLC. Defendant [QT] also made payments on invoices sent by Plaintiff to MedCom." (FAC ¶ 7). "MedCom's billing department sent invoices to Plaintiff directing Plaintiff to submit payment to [QT]. These invoices from MedCom were on [QT] letterhead. Additionally, in January 2011 MedCom directed its partners to send their current balances with MedCom, as well as all future payments, to the bank account of [QT]." (Id. ¶ 8).

- Medcom and QT were held out to be part of the same company. (FAC ¶ 9).

In particular, Chunghwa says that around July 2011, it noticed that QT was issuing invoices for telecommunication services Chunghwa received pursuant to the Agreement with Medcom and that QT made payment on some of Chunghwa's invoices. (FAC ¶ 19). On July 27, 2011, HongYi Shih (plaintiff's accounting manager) asked Eric Lin (Chunghwa's contact at Medcom) whether Medcom had changed its name to QT-Talk and requested notice of any name change so that plaintiff could make a notation in its accounting system for audit purposes. (Id.). In response, Paul Cordasco (QT's Director of Finance) sent Shih a copy of QT's reciprocal contract form, which was identical to the Medcom-Chunghwa Agreement, except that Medcom's name was replaced with QT's. (Id. ¶ 20). Dissatisfied with this response, on July 29, 2011 Chunghwa said it decided to stop sending traffic to either Medcom or QT. (Id. ¶ 21). Two days later, Lin emailed QT's officers Cordasco and defendant Cooper, requesting an answer to Chunghwa's July 27 inquiry "or they will stop to send traffic to us." (Id. ¶ 22).

Plaintiff says that on August 1, 2011, it again requested more information about the

relationship between Medcom and QT.  (Id. ¶ 23).  Several days later, on August 5, 2011, Cordasco told Chunghwa that QT was the "retail brand" and Medcom was the "wholesale" side of the same company, adding that "due to brand unification we are collapsing [M]edcom into [Q]t [T]alk."  (Id.).  That same day, plaintiff says that Cordasco provided plaintiff's accounting department with a January 20, 2011 bank change notice from Medcom to its "partners," advising that QT had penetrated the marketplace and "has quickly become the engine for [Medcom's] growth."  (Id. ¶¶ 23-24).  The notice, which was signed by Medcom's Chief Operating Officer, Carlton Barlow, further advised that the new banking information was to be used for "any current balances/future payments" and directed Medcom's partners to make payments to QT's bank account.  (Id. ¶ 24).  Chunghwa further alleges that Coooper was included on the emails about the Medcom-QT relationship, and he never once contradicted Cordasco's statements or took any action to correct any understanding by plaintiff that Medcom and QT were one and the same company.  (Id. ¶ 26).

Chunghwa further contends that QT purposefully availed itself of the privilege of conducting activities in California by:  soliciting and receiving business services from Chunghwa, a California corporation; directing, from at least 2010 to 2012, numerous communications to Chunghwa in California; sending payments to plaintiff's California bank account; sending invoices to plaintiff in California; and otherwise engaging in business transactions with plaintiff.  (FAC ¶ 13).

Relying on defendants' representations that QT and Medcom were the same company, Chunghwa says that it continued to provide telecommunications services to them.  (FAC ¶ 27). Between January 2012 and September 2012, plaintiff says that QT/Medcom's telecommunications usage was typically less than $100 per week.  (Id. ¶ 28).  In September 2012, however, plaintiff says that Cooper, in his capacity as QT's Chief Executive Officer, asked Chunghwa's sales representative, Peter Pan, to add Cooper on MSN Skype messenger.  (Id. ¶¶ 14, 29).  Thereafter, in September and October 2012, plaintiff says that Cooper phoned or messaged Pan just about every day, asking that telecommunications traffic capacity for Medcom/QT be increased.  (Id.  ¶ 29). Pan did so.  (Id.).

7

1   According to the FAC, Medcom/QT's usage then skyrocketed to $6,360.04 for the week of
2   September 24-30,2012; $32,849.53 for the week of October 1-7, 2012; and then to $34,417.07 and
3   $58,731.04 in the following weeks. (FAC ¶ 30). Plaintiff says that Medcom and QT did not pay
4   for these services. (Id.).

5   In late October or early November 2012, plaintiff says that it contacted Medcom and QT
6   about the increased usage and outstanding balance. (FAC ¶ 31). Defendants allegedly said that
7   payments were simply delayed because of Hurricane Sandy and requested that plaintiff continue to
8   provide service and to also provide additional telecommunications traffic to Guatemala. (Id.).
9   Specifically, Cooper allegedly told Pan on November 9, 2012 that he was working on making
10  payment to Chunghwa, but asked Pan to be patient because servers were down due to the
11  hurricane. (Id. ¶ 32). That same month, QT's Director of Business Development, Chris Sander,
12  told plaintiff that payments were delayed because of the hurricane, asked for Chunghwa's patience
13  while QT worked to resolve its accounts payable, and assured plaintiff that payments were
14  forthcoming. (Id.). Plaintiff declined to provide additional services for traffic to Guatemala, but
15  says that it continued to provide service to Medcom/QT based on defendants'' assurances that
16  payments were forthcoming. (Id. ¶ 33). Chunghwa claims that Medcom and QT never did pay
17  up, even after Hurricane Sandy passed and normal business operations resumed. (Id. ¶ 34). The
18  FAC further alleges that Medcom is no longer in business and that defendants now claim that
19  Medcom and QT are entirely separate entities, leaving Chunghwa with $197,698.18 in unpaid
20  invoices. (Id. ¶¶ 2, 35-36).

21  QT argues that the FAC's alter ego allegations are entirely conclusory and that the FAC
22  fails to say that Medcom was undercapitalized, incapable of paying its bills, or is or ever was
23  defunct. If anything, QT says that the FAC indicates that Medcom was sufficiently capitalized
24  and paid its bills for two years before defaulting. Whether plaintiff will actually succeed in
25  establishing a claim for relief remains to be seen. For present purposes, however, the court finds
26  that plaintiff has alleged sufficient facts supporting its alter ego theory and indicating that its
27  claims arise out of QT's forum-related activities.
28

### 2. Defendant Cooper

Cooper argues that under the fiduciary shield doctrine, he cannot be subject to this court's jurisdiction simply because of his association with Medcom or QT.

"The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely on the basis of their employers' minimum contacts within a given jurisdiction." j2 Global Commc'ns, Inc. v. Blue Jay, Inc., No. 4:08-cv-04254-PJH, 2009 WL 29905, at *5 (N.D. Cal., Jan. 5, 2009). Thus, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." Davis v. Metro Products, Inc., 885 F.2d 515, 520 (9th Cir. 1989); Wolf Designs, Inc. v. DHR Co., 322 F. Supp.2d 1065, 1072 (C.D. Cal. 2004). But while employees are not necessarily subject to liability in a given jurisdiction based on the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984) (finding jurisdiction proper over non-resident corporate employees where the employees were the primary participants in an alleged wrongdoing intentionally directed at a California resident).

"The fiduciary shield doctrine may be ignored in two circumstances: (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities." j2 Global, 2009 WL 29905, at *5 (citing Wolf Designs, 322 F. Supp.2d at 1072). "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Wolf Designs, 322 F. Supp.2d at 1072 (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir.1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort")). "Personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, or the 'central figure' in the challenged corporate activity." j2 Global, 2009 WL 29905, at *5 (citing Wolf Designs, 322 F. Supp.2d at 1072). "If acts taken by a corporate officer subjects the officer to personal liability (i.e., the corporate officer authorized, directed or

9

participated in tortious conduct), and those acts create contact with the forum state, such acts are not only acts of the corporation but also acts of the individual, and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the individual." Id. at *6 (citing Seagate Technology v. A.J. Kogyo Co., 268 Cal. Rptr. 586, 588-91 (Cal. Ct. App. 1990); Taylor-Rush v. Multitech Corp., 265 Cal.Rptr. 672, 680 (Cal. Ct. App. 1990)).

As discussed above, Chunghwa alleges that Cooper personally directed, participated in, and ratified the alleged fraudulent acts giving rise to this lawsuit. Chunghwa claims that Cooper knew about and essentially went along with Paul Cordasco's representations that Medcom and QT were the same company. Plaintiff further claims that it was Cooper who solicited increased traffic capacity through near daily phone calls or on Skype with Chunghwa's Pan. Plaintiff specifies at least one phone call in which Cooper told Pan that he was working on making payment to Chunghwa. Cooper argues that these acts do not subject him to jurisdiction in California because they were made in New York in his corporate (not individual) capacity. The gravamen of the FAC, however, is that Coopers' representations were false or fraudulent in that defendants had no intention of ever paying Chunghwa. Thus, Coopers' participation and control in making these representations on behalf of Medcom/QT subject him to personal jurisdiction here. See Taylor-Rush, 265 Cal. Rptr. at 677 ("Corporate officers and directors cannot ordinarily be held personally liable for the acts or obligations of their corporation. However, they may become liable if they directly authorize or actively participate in wrongful or tortious conduct.").

### 3. Whether the exercise of jurisdiction is reasonable

The court must nevertheless consider whether the exercise of jurisdiction is reasonable. In determining reasonableness, the court considers (1) the extent of the defendants' purposeful interjection into the forum state, (2) the burden on the defendants of defending in the forum state, (3) the extent of the conflict with the sovereignty of the defendants' state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985);

Bancroft & Masters, 223 F.3d at 1088.

As discussed above, defendants have a "heavy burden" to present a "compelling case" that the exercise of jurisdiction is unreasonable. They have not met that burden here. Indeed, defendants' moving papers do not clearly address each of the Burger King factors. Inasmuch as plaintiff has shown purposeful availment into California, the first factor favors Chunghwa. The second factor is neutral because the burden of litigating in California will be no greater than the burden on Chunghwa of litigating in Nevada or in New York. The third factor is also neutral because no one has identified a conflict between California and Nevada or New York. The fourth factor favors Chunghwa because California has a strong interest in providing an effective means of redress for its residents from unlawful conduct. The fifth factor is neutral in that, on the limited record presented, it appears that there may be an equal number of witnesses in and outside California. The sixth factor favors Chunghwa in that it is important to plaintiff to have this dispute resolved here. Finally, while there may be an alternate viable forum in Nevada or New York, defendants make no arguments as to the preferability of either one over California.

On balance, most of these factors either favor plaintiff or are neutral. Thus, defendants have not met their burden of demonstrating that the exercise of jurisdiction is unreasonable. Their motion to dismiss for lack of personal jurisdiction is denied.

**B. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

Defendants nevertheless maintain that the FAC still fails to allege sufficient facts establishing a claim for relief. A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual

11

allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S.Ct. at 1950. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile. Rivera v. BAC Home Loans Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996)).

**1. Claim 1: Breach of Contract**

The FAC asserts a claim for breach of contract as to both Medcom and QT. As to QT, the FAC alleges that QT is liable under the Agreement as MedCom's alter ego and also because QT "assumed the Agreement when it subsumed MedCom." (FAC ¶ 38). QT moves to dismiss this claim, arguing that it is not MedCom's alter ego and that QT was not a party to the subject Agreement.

Chunghwa's claim, based on the alter ego theory, does not create separate primary liability in QT; rather, the alter ego doctrine provides a means for extending liability to QT. See Hennessey's Tavern, Inc. v. American Air Filter Co., 251 Cal. Rptr. 859, 863 ("A claim against a

defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice."). As discussed above, the FAC alleges sufficient facts re alter ego liability. Those allegations, if proved, may extend the liability alleged to exist for breach of contract to QT.

QT nevertheless disputes plaintiff's allegations that it somehow assumed the Agreement, pointing out that the Agreement provides that it "may not be modified, except by written documents signed by authorized officers of the Parties hereto." (Agreement § 19). That is an issue to be decided another day. On the present motion, the court must take all material allegations as true and construe them in the light most favorable to Chunghwa.

QT's motion to dismiss this claim is denied.

### 2. Claims 2 and 3: Fraud and Negligent Misrepresentation and Request for Punitive Damages

Defendants move to dismiss these claims, arguing that the FAC lacks the necessary specificity and fails, in any event, to allege sufficient facts establishing that any fraud actually took place. Additionally, defendants argue that any claim for punitive damages is barred by the terms of the Agreement itself. In defendants' view, this merely is an action for breach of contract for which no punitive damages are available. See Cal. Civ. Code § 3294(a) (providing that "[i]n an action for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. . ..")

To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. Lazar v. Super. Ct., 909 P.2d 981, 984 (Cal. 1996). "Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a

past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." Fox v. Pollack, 226 Cal. Rptr. 532, 537 (Cal. Ct. App. 1986).

Regardless of the theory under which plaintiff seeks to assert a claim for fraud, his complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). To survive a motion to dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).

As discussed above, the FAC alleges that defendants falsely represented that MedCom and QT were one and the same company. Cooper allegedly knew that QT and Medcom were not adhering to corporate formalities and that such conduct would cause plaintiff to believe that the two companies were actually one, thereby allegedly inducing plaintiff to continue providing telecommunications services. Then came the surge in defendants' telecommunications capacity usage, followed by nonpayment for plaintiff's provision of services. The upshot of this alleged scheme was that defendants falsely induced plaintiff into providing ever increasing capacity, knowing that they were not going to pay for those services.

Defendants contend that these allegations state nothing more than a claim for nonpayment (i.e., breach of contract) because simply asking for increased capacity is not fraud. Nevertheless, taking all material allegations in the complaint as true and construing them in the light most favorable to Chunghwa, the gravamen of plaintiff's fraud and negligent misrepresentation claims is that defendants duped plaintiff into continuing to provide ever-increasing telecommunications capacity and then ran up the bill, knowing that they were never going to pay. And, punitive

14

damages may be recovered "upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract." Schroeder v. Auto Driveaway Co., 523 P.2d 662, 671 (Cal. 1974).[7]

Defendants nevertheless argue that punitive damages are barred by a limitation of liability term in the Agreement that provides that no party will be liable for "any indirect, special, incidental or consequential losses arising from the Agreement and the performance (or nonperformance) of obligations under that contract. (Dkt. 44, Mot. at ECF p. 27). Limitation of liability clauses, however, are ineffective with respect to claims of fraud or misrepresentation. Blankeheim v. E.F. Hutton & Co., 266 Cal. Rptr. 593, 598-99 (Cal. Ct. App. 1990); Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.").

Defendants' motion to dismiss this claim is denied.

### 3. Quantum Meruit

The FAC asserts a claim for quantum meruit against QT Talk. "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." In re De Laurentis Entertainment Group, Inc., 963 F.2d 1269, 1272 (9th Cir.1992). "Quantum meruit is based *not* on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation." Id. "To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." Ochs v. PacifiCare of Cal., 9 Cal. Rptr.3d 734, 742 (Cal. Ct. App. 2004).

QT argues that a claim for quantum meruit cannot be pled where an actual contract exists.

---

[7] Punitive damages, however, are not awardable for negligent misrepresentation. Reid v. Moskovitz, 255 Cal. Rptr. 910, 912 (Cal. Ct. App. 1989).

Additionally, QT contends that it is of no significance whether QT may have received certain beneficial services, arguing that there can be no quantum meruit recovery from a party who accepted services, but did not agree to pay for them. See, e.g., Corsini v. Canyon Equity, LLC, 2011 U.S. Dist. Lexis 54872 (N.D. Cal, May 23, 2011) (dismissing the plaintiff's quantum meruit claim where the pleading failed to present facts supporting an understanding that anyone other than the non-moving defendant agreed to compensate the plaintiff for services).

Chunghwa does not dispute that, under California law, a defendant may not be held liable for breach of an express contract and for quantum meruit. Rather, plaintiff says that its quantum meruit claim is an alternate theory of liability. Alternate theories of recovery are allowed at the pleading stage. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Int'l Medcom, Inc. v. S.E. Int'l, Inc., No. C13-05193 LB, 2014 WL 262125, at *7 (N.D. Cal., Jan. 23, 2014) (concluding that the plaintiff could proceed on claims for breach of contract and an alternate quantum meruit claim). As discussed above, the FAC alleges that QT issued invoices for services; plaintiff provided services; and that QT Talk accepted and enjoyed the benefits of those services, knowing that Chunghwa expected QT Talk to pay for those services. (See, e.g., FAC ¶¶ 19, 33-34, 67).

Defendants' motion to dismiss this claim is denied.

## ORDER

Based on the foregoing, the court denies defendants' Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction and their Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.

SO ORDERED.

Dated:   October 5, 2016

HOWARD R. LLOYD
United States Magistrate Judge

<wbr>

5:13-cv-02104-HRL Notice has been electronically mailed to:

Chip Cox    chipc@gpsllp.com, pvoight@gpsllp.com

Helen Lee Greenberg    helen.greenberg@lewisbrisbois.com, carol.jensen@lewisbrisbois.com, elaine.auwbrey@lewisbrisbois.com, normajean.vincent@lewisbrisbois.com

Michael Fishman    MFishman@mflawny.com

Michael Steven Romeo    romeo@lbbslaw.com

Nelson Hsieh    nhsieh@gpsllp.com, ccalone@gpsllp.com

Yen Phi Chau    ychau@gpsllp.com, shigh@gpsllp.com