UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHUNGHWA TELECOM GLOBAL, INC, <br><br> Plaintiff, <br><br> v. <br><br> MEDCOM, LLC, et al., <br><br> Defendants. | Case No. 5:13-cv-02104-HRL <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 78 |

## BACKGROUND

Plaintiff Chunghwa Telecom Global, Inc. (Chunghwa) sued for alleged breach of contract and fraud arising out of a reciprocal telecommunications service agreement (Agreement) it entered into with defendant MedCom, LLC (MedCom) in August 2010. At some point prior to the filing of this action, MedCom ceased its business and is defunct. (Dkt. 1-1, Complaint ¶ 2; Dkt. 34, Amended Complaint ¶ 2). The other remaining defendants are QT Talk LLC[1] (QT) and one David Cooper.[2] According to the Amended Complaint (the operative pleading), QT and MedCom are alter egos of each other, and QT assumed the Agreement between Chunghwa and MedCom. (Dkt. 34 at ¶ 3). Cooper is alleged to be an officer, employee and/or shareholder of both MedCom and

---

[1] QT Talk says it erroneously was sued as "QT Talk, Inc."

[2] An additional defendant, Chris Sander, was dropped from this suit in an amended pleading. (See Dkt. 34).

QT, who actively participated in, directed, ratified, and authorized all acts alleged as to those companies. (Id. ¶ 4).

In sum, Chunghwa claims that defendants fraudulently induced the company to provide telecommunications services for which they had no intention of paying. According to the allegations, MedCom's weekly telecommunications use in 2011 was relatively small, with bills ranging from less than $100 to $200, occasionally approaching $900, with typical usage for the first 8 months or so of 2012 being less than $100 per week. (Amended Complaint ¶ 18, 28). Then, around mid-September 2012, Chunghwa says that defendants' usage skyrocketed to $6,360.04 for the week of September 24-September 30, 2012, and $32,849.53 for the week of October 1-7, 2012. (Id. ¶ 30). In the following weeks, defendants' usage continued to balloon to $34,417.07 and $58,731.04, but defendants did not make payments as required by the Agreement. (Id.). Plaintiff says that it continued to provide services based on defendants' assurances that payment would be made. But, Chunghwa says that defendants never did pay up. And, as of the time this suit was filed, plaintiff said that the unpaid principal balance owed by defendants was $197,698.18. (Id. ¶ 36).

Chunghwa filed its complaint in state court. Defendants removed the matter here, asserting diversity jurisdiction, 28 U.S.C. § 1332. They then moved to dismiss the complaint for lack of personal jurisdiction, improper service, and failure to state a claim. Fed. R. Civ. P. 12(b)(2), (b)(5), (b)(6). All parties expressly consented that all proceedings in this matter were to be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The court denied the motion to dismiss re service of process, but granted the motion to dismiss for lack of personal jurisdiction and failure to state a claim, with leave to amend.

Plaintiff subsequently filed its Amended Complaint, reasserting a claim for breach of contract against Medcom and QT, as well as claims for fraud and negligent misrepresentation against all defendants. The Amended Complaint also reasserted a claim for quantum meruit against QT. Unlike the original complaint, the Amended Complaint no longer asserted a separate claim for punitive damages; but, plaintiff continued to seek punitive damages as part and parcel of its claims for fraud and negligent misrepresentation. Defendants once again moved to dismiss for

2

lack of personal jurisdiction and failure to state a claim for relief. Fed. R. Civ. P. 12(b)(2), (b)(6). That motion was denied. (Dkt. 53).

Meanwhile, defendants' New York and local counsel moved to withdraw from this matter. Counsel reported that defendants stopped communicating with them and failed to pay their legal fees. And, indeed defendants evidently discharged both firms as their counsel in this case and expressed that they no longer wanted either firm to represent them. No one opposed the motions to withdraw, which were granted on the condition that the withdrawing attorneys would continue to receive papers and forward them to defendants unless and until defendants appeared through other counsel. (Dkt. 65). In boldfaced and underlined text, the order told MedCom and QT that "they may not appear pro se or through their corporate officers, but must retain new counsel forthwith to represent them in this lawsuit." (Id.). MedCom and QT were "further advised that they retain all of the obligations of a litigant, and their failure to appoint an attorney may lead to an order striking their pleadings or to entry of their default." (Id.).

None of the defendants retained new counsel; and indeed, they apparently have stopped paying attention to this lawsuit. Their response to the Amended Complaint being long overdue, Chunghwa moved for entry of their default and served notice on former defense counsel. (Dkts. 66-71, 75). Default was entered as to all defendants on January 11, 2017. (Dkts. 72-74).

Chunghwa now moves for default judgment on all claims,[3] although it seeks damages only on its claim for breach of contract in the amount of $197,698.18, plus prejudgment interest of $86,337.23, and costs of $743.35 for a total judgment of $284,778.76. At the motion hearing, the court directed plaintiff to submit a supplemental letter with updated interest calculations. Upon consideration of the moving papers, as well as the oral arguments presented, this court grants the motion.

---

[3] Plaintiff served defendants with its motion by mailing copies to former defense counsel for forwarding purposes. (Dkt. 83).

3

**LEGAL STANDARD**

After entry of default, courts may, in their discretion, enter default judgment. Fed. R. Civ. P. 55; Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, the court may conduct a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

**DISCUSSION**

**A.  Jurisdiction and Service of Process**

The exercise of subject matter jurisdiction over this matter is proper because the Amended Complaint establishes the requirements for diversity jurisdiction, 28 U.S.C. § 1332. Plaintiff is a California corporation based in San Jose, California. MedCom is alleged to be a Nevada corporation, with its principal place of business in New York. QT is also alleged to be a Nevada corporation with its principal place of business in New York. Cooper is alleged to be a resident of New York. And, Chunghwa's claimed unpaid principal balance of $197,698.18 is well over the $75,000 threshold. (Amended Complaint ¶¶ 11, 36).[4]

As discussed, this court has already concluded that it has personal jurisdiction over the defendants. (Dkt. 53).

Although defendants initially challenged service of process, their motion to dismiss on that

---

[4] Although he has since been dropped from this lawsuit, the original complaint alleged that Sanders was a New York resident. (Dkt. 1-1 at ECF p. 3).

4

issue was denied. (Dkt. 33).

**B. The <u>Eitel</u> Factors**

All of the <u>Eitel</u> factors favor entry of default judgment here.

This court has already concluded that Chunghwa sufficiently alleged a claim for breach of contract against MedCom and QT, and for fraud and negligent misrepresentation as to all defendants. (Dkt. 53). Although the amount of money at stake is not insignificant, it is reasonable and targeted to defendants' actions, i.e., the failure to pay for telecommunications services provided by plaintiff. Because all liability-related allegations are deemed true, there is no possibility of a dispute as to material facts. Defendants received proper notice of this lawsuit; and, although they appeared initially and challenged the pleadings, they have ceased defending against plaintiff's claims. There is no indication that their default was due to excusable neglect. While the court prefers to decide matters on the merits, defendants' failure to participate in this litigation makes that impossible. A default judgment against them is plaintiff's only recourse.

**C. Damages**

As discussed above, Chunghwa seeks damages only for breach of contract. Accordingly, the following discussion concerns only defendants MedCom and QT.

**1. Principal Unpaid Balance**

In support of the present motion, Chunghwa has submitted the declaration of Jack Liu (its Associate Director of Finance), appending the invoices showing the outstanding balance for each billing period in the relevant time frame. (Dkt. 79, Liu Decl. ¶¶ 4-9, Exs. A-F). Having reviewed the documents, and having accepted plaintiff's further explanation at oral argument, this court finds that the principal unpaid balance is capable of being ascertained from definite figures. Plaintiff therefore is entitled to an award of the unpaid principal balance of $197,698.18.

**2. Prejudgment Interest**

"Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." Cal. Civ. Code § 3289(a). "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." <u>Id.</u> §

United States District Court
Northern District of California

3289(b). Here, the Agreement's "Payment Terms" provide, in relevant part: "Late payments shall be assessed a late charge of 1.5% per month or the maximum amount permitted by law, whichever is less." (Dkt. 45-1 at ECF p. 3). Chunghwa says that it has opted for interest at 10% per year, see Cal. Civ. Code § 3289, and that its interest calculation is $86,337.23. (Liu Decl. ¶ 11; see also Dkt. 86). Based on the discussion held at the hearing, and counsel's explanation of the calculated interest, this court is satisfied that the requested sum is correct and comports with the terms of the Agreement.

### 3. Costs

The requested $743.35 in costs is amply supported by the Liu Declaration and submitted exhibits. (Liu Decl. ¶ 12, Ex. G).

### ORDER

Based on the foregoing, Chunghwa's motion for default judgment is granted. Damages in the amount of $284,778.76 are awarded as to defendants MedCom and QT. The clerk shall enter judgment accordingly and close this file.

SO ORDERED.

Dated: May 12, 2017

HOWARD R. LLOYD
United States Magistrate Judge